# United States Court of Appeals For the Federal Circuit

ROBERT TERRACINO, BRADIE TERRACINO,

*Plaintiffs-Appellants,*

v.

TRIMACO, INC., fka TRIMACO, LLC,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of North Carolina in Case No. 5:22-cv-00015-FL
Judge Louise W. Flanagan

## CORRECTED BRIEF OF APPELLEE

DEBORAH POLLACK-MILGATE
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
(317) 231-1313
dpollackmilgate@btlaw.com

ALLEN R. BAUM
BARNES & THORNBURG LLP
4208 Six Forks Road, Suite 1010
Raleigh, NC 27609
(919) 536-6200
allen.baum@btlaw.com

*Counsel for Appellee*

SEPTEMBER 11, 2025

# U.S. PATENT NO. 9,044,917

1. A non-skid protective cloth or pad, consisting of:

a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and

c) stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer;

whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75.

6. A non-skid protective cloth or pad, consisting of:

a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed

adjacent said lower layer of said single, absorbent, woven upper layer, said lower major surface comprising said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and

c) stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer;

whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---:|:---|
| **Case Number** | 2025-1808 |
| **Short Case Caption** | Terracino v. Trimaco, Inc. |
| **Filing Party/Entity** | Trimaco, Inc. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/11/2025

Signature: /s/ Deborah Pollack-Milgate

Name: Deborah Pollack-Milgate

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Trimaco, Inc. | | Garland Industries, Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Joseph Fehribach | John M. Moye | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................v

STATEMENT OF RELATED CASES ...................................................................1

INTRODUCTION ................................................................................................2

STATEMENT OF THE ISSUES............................................................................8

STATEMENT OF THE CASE AND FACTUAL BACKGROUND .....................10

SUMMARY OF THE ARGUMENT ....................................................................24

STANDARD OF REVIEW ..................................................................................25

ARGUMENT ......................................................................................................26

I.      Appellants Have Waived Each of Their New Claim Construction
        Arguments..................................................................................................26

II.     The Challenged Claim Construction Rulings Were Correct. .......................30

        a.      The Use of the Term "Consisting of" Closes the Patent Claims to a
                Third Layer..........................................................................................31

        b.      The Limitation "said height of bumps having the smaller of said at
                least two different circumferential sizes being greater than the
                height of said bumps having said larger of said at least two
                circumferential sizes" Was Added by Appellants to Overcome the
                Prior Art and Restricted the Covered Embodiments...........................34

        c.      The District Court Correctly Determined That "said downward
                projecting bumps comprising bumps having at least two different
                circumferential sizes" Must Be Measurable. ......................................38

III.    The Claim Term "Whereby when tested in accordance with TAPPI T548
        specification, an average slide angle is no less than approximately 40
        degrees" Is Indefinite. ...................................................................................39

IV.     The Court's Summary Judgment Determination Is Sustainable for Two
        Additional, Independent Reasons. ................................................................41

        a.      Appellants Failed to Present Evidence of Infringement. ....................41

        b.      Appellants Admitted Noninfringement by Failing to Respond to
                Requests for Admission, which Were Then Deemed Admitted. ........44

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*,
  133 F.4th 1359 (Fed. Cir. 2025) ............................................................30

*Bot M8 LLC v. Sony Corp. of Am.*,
  4 F.4th 1342 (Fed. Cir. 2021) .................................................................20

*Conoco, Inc. v. Energy & Env'l Int'l, L.C.*,
  460 F.3d 1349 (Fed. Cir. 2006) ........................................................27, 32

*Data Engine Techs. LLC v. Google LLC*,
  10 F.4th 1375 (Fed. Cir. 2021) ...............................................................30

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
  192 F.3d 973 (Fed. Cir. 1999) ................................................................31

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ..............................................................26

*Est. of Jones by Jones v. City of Martinsburg*,
  No. 3:13-CV-68, 2016 WL 10585014 (N.D. W. Va. Dec. 2, 2016) ............44, 45

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ..............................................................26

*Finjan LLC v. ESET, LLC*,
  51 F.4th 1377 (Fed. Cir. 2022) ...............................................................26

*Grutzmacher v. Howard Cnty.*,
  851 F.3d 332 (4th Cir. 2017) ..................................................................26

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ..................................................................30

*Masco Corp. v. United States*,
  303 F.3d 1316 (Fed. Cir. 2002) ..............................................................31

v

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
    357 F.3d 1340 (Fed. Cir. 2004) ........................................................31

*Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*,
    831 F.3d 1350 (Fed. Cir. 2016) ........................................................31

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014).........................................................................40

*Norian Corp. v. Stryker Corp.*,
    363 F.3d 1321 (Fed. Cir. 2004) ........................................................32

*Omega Eng'g, Inc. v. Raytek Corp.*,
    334 F.3d 1314 (Fed. Cir. 2003) ........................................................36

*Orion Tech., Inc. v. United States*,
    704 F.3d 1344 (Fed. Cir. 2013) ........................................................26

*PSN Illinois LLC v. Ivoclar Vivadent, Inc.*,
    525 F.3d 1159 (Fed. Cir. 2008) ........................................................37

*Purdue Pharma L.P. v. Endo Pharms. Inc.*,
    438 F.3d 1123 (Fed. Cir. 2006) ........................................................36

*United States ex rel. Graybar Elec. Co. v. TEAM Constr., LLC*,
    275 F. Supp. 3d 737 (E.D.N.C. 2017) ..............................................44

*Zelinski v. Brunswick Corp.*,
    185 F.3d 1311 (Fed. Cir. 1999) .................................................41, 43

**Statutes**

28 U.S.C. § 1927.....................................................................................23

35 U.S.C. § 103(a) ...........................................................................12, 36

35 U.S.C. § 112 .......................................................................................12

35 U.S.C. § 285.......................................................................................23

**Other Authorities**

Fed. R. Civ. P. 36(a)(3).........................................................................44

Fed. R. Civ. P. 56(d) ................................................................................22

## STATEMENT OF RELATED CASES

Counsel for Appellee is unaware of any related proceedings within the meaning of Federal Circuit Rule 47.5(a)(1).

# INTRODUCTION

Appellee Trimaco, Inc. ("Appellee") has sold two products that Appellants have accused of infringing U.S. Patent No. 9,044,917 (the "'917 Patent"), entitled "Non-Skid Protective Cloth or Pad": the Stay Put Canvas and Stay Put Canvas Plus drop cloths ("the Accused Products"). Appx29. The Stay Put Canvas drop cloth includes only a canvas layer and a surface grip layer, while the Stay Put Plus Canvas drop cloth includes an additional third layer, a liquid barrier. *Id.* Appellants now admit—*for the first time on appeal*—that the Stay Put Plus Canvas drop cloth cannot, as a matter of law, infringe their patent claims directed to a closed, two-layer configuration. This admission serves as confirmation, as set forth below, that this litigation has been largely, if not entirely, a waste of time.

This Appeal should be disposed of forthwith, including because it rests substantially, if not wholly, on claim construction arguments never made below and, as such, not preserved for appeal. First filed on January 7, 2022, this patent infringement matter lacked merit from the outset. Appellants struck a bargain with the United States Patent and Trademark Office ("USPTO") that rendered granted independent claims 1 and 6 of the '917 Patent inapplicable to Appellee's Accused Products, if not altogether non-sensical from a technical perspective. In brief, to overcome the prior art and obtain a patent to a non-skid cloth, Appellants substantially narrowed their patent claims. First, they disclaimed any structure (1)

other than a two-layer cloth embodiment; and (2) other than an embodiment in which, in a lower surface with downward projecting bumps, the bumps have circumferences in which the circumferentially smaller bumps are taller than the circumferentially larger bumps. Appx11, Appx20. Roughly speaking, such a configuration of bumps would look like this:



*Id.* at 17; *see also id.* at 57 ('917 Patent at col. 5, ll. 60-62).[1] Appellee's Stay Put Plus Canvas drop cloths include three layers and are therefore not covered by a patent claim limited to two layers, either independent claim 1 or claim 6, as now admitted by Appellants. And it is undisputed that neither of the Accused Products includes the claimed configuration of claims 1 and 6 in which all of the circumferentially smaller bumps are taller than the circumferentially larger ones.

To overcome these deficits, during litigation Appellants attempted to construe the claim terms to recapture what they surrendered during prosecution. Despite

---

[1]This drawing was a demonstrative presented in Appellee's Opening Brief on Claim Construction, Appx690, and has never been challenged by Appellants as an inaccurate representation of one of the embodiments described in the '917 Patent.

limiting their claims to a two-layered embodiment by using the term "consisting of," they argued that granted claims 1 and 6 were open to three layers—ignoring the plain and ordinary meaning of "consisting of"—arguing that the third layer was unrelated to the invention (even though this specific embodiment is disclosed in their specification). Appx1181-83, Appx56 ('917 Patent at col. 4, ll. 47-49). Despite the differential size limitations concerning the bumps in claims 1 and 6, they argued that the size limitations were, in fact, unrestricted. *Id.* at 1200. In particular, they argued that a single circumferentially smaller bump that was taller relative to another circumferentially larger bump would satisfy the claim limitation requiring "said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes." They did so even though this meant pursuing a construction that would render the limitation meaningless and run headlong into prior art they had overcome by disclaiming broader embodiments. In particular, their disclaimer was necessary in view of U.S. Patent No. 5,567,497 ("Zegler"),[2] which discloses a "thermoplastic contact layer 40 [that] includes on its lower surface a plurality of shallow thermoplastic projections, exemplified by dimples or nodules in FIG. 4-8, which extend away from the face layer 30." Appx680 (citing Appx962); *see also* Appx1200, Appx689-91.

---

[2] Zegler in its entirety appears in the Appendix at 1145-53.

The overlap between *Zegler* and the configuration Appellants disclaimed is apparent. Both disclose thermoplastic grids that include bumps where circumferentially larger bumps are taller than circumferentially smaller bumps, on a downward facing layer. *Compare* Figure 1 from the Appellants' Patent, with Figure 1 from *Zegler*:



*Figure 1*



Appellants also argued that, even though claims 1 and 6 specified that "said downward projecting bumps [would comprise] bumps having at least two different circumferential sizes," there was no need for the circumferences of the bumps to be in fact measurable, visually or otherwise. Appx14.

The district court correctly rejected Appellants' efforts at the claim construction stage to divert from the plain and ordinary meaning of "consisting of" and otherwise recapture embodiments they had unequivocally disclaimed during patent prosecution. After they lost these arguments, however, they did not stipulate non-infringement to allow an appeal forthwith. They sought discovery instead, arguing that claim construction did not end their dispute, and that disputed issues of fact remained. Limited discovery proceeded.

Then, in response to Appellee's motion for summary judgment—and although they had been permitted discovery—Appellants failed to submit any evidence of infringement. After a hearing on Appellee's motion, the district court allowed Appellants another opportunity to supplement the record in opposition to summary judgment. They responded by introducing a "supplemental opinion" directed to claim construction, which the district court rejected. Appx42-43. And now they proceed on appeal, further wasting Appellee's and this Court's time and resources by proposing claim construction arguments not made below and therefore waived, and by conceding—at long last—that a three-layer product cannot infringe a patent

closed to two layers, thereby agreeing with Appellee's rationale for seeking dismissal of this matter at the outset, at least with respect to the Stay Put Canvas Plus product.

The district court's claim construction ruling, and later summary judgment determination, are legally sound and should be sustained. In addition, the district court's determinations on summary judgment are sustainable on bases other than those the Appellants raise, including (1) Appellants' failure to put forward *any* evidence of infringement, either in their infringement charts or in response to a motion for summary judgment, including with respect to the TAPPI limitations of claims 1 and 6 (*see* Appx1522, Appx1524) (contending only that the TAPPI limitations were "functional" and "as a result of the structural configuration of the complete structure . . . would be infringed . . . ."); and (2) Appellants' failure to respond to requests for admission that admitted non-infringement by conceding that Appellee's drop cloths did not meet the claim limitations (Appx1623-32).

# STATEMENT OF THE ISSUES

Trimaco provides the following counterstatement of the issues:

1.     Did Appellants waive the only argument they now make on appeal, namely, that the separate use of the transitional term "comprising" in claims 1 and 6 means that the claims are open to any configuration of sizes and shapes of the bumps, whether measurable or not, and so long as at least one circumferentially smaller bump is taller than at least one circumferentially larger bump, notwithstanding disclaimer?

2.     Did the district court properly conclude that the "consisting of" language of the only independent claims, claims 1 and 6, covering a two-layer non-skid protective cloth or pad, precluded any claim of infringement against a three-layer non-skid protective cloth, where the patent examiner concluded, in the parent application, and having rejected a multilayer embodiment, that "Applicant has amended the preamble language of the claim by closing up the recitation and making it a two layered structure."? Appx822.

3.     Did the district court properly conclude that in a claim term "comprising bumps having at least two different circumferential sizes," present in claims 1 and 6, one of ordinary skill in the art would have to be able to measure them circumferentially, whether visually or otherwise, to know whether one bump was smaller (or larger) than the other, circumferentially?

4.      Did the district court properly conclude that claims 1 and 6 require all of the said circumferentially smaller bumps to be taller than the said circumferentially larger bumps in view of a plain reading of the limitation and the prosecution history in which Appellants deleted and disclaimed other configurations, including wherein the configuration was limited to the requirement that "downward projecting bumps comprise bumps of at least two different heights?"

5.      Is the district court's determination separately sustainable based on the Appellants' failure to provide – *ever* – evidence in support of infringement, irrespective of any claim construction and/or to respond to requests for admission?

## STATEMENT OF THE CASE AND FACTUAL BACKGROUND

*The Parent Application:* Appellants filed the first application in connection with a non-skid protective cloth or pad on July 27, 2009, Application 12/460,763, with the following draft claim 1: [3]

```
What is claimed is:

1.  A non-skid protective cloth or pad, comprising:

    a)   a woven, upper layer having an upper and a lower
major surface;

    b)   a lower, resilient layer having an upper and a
lower major surface, said upper major surface of said lower
resilient layer being disposed adjacent said lower layer of
said woven upper layer;   and

    c)   means for fastening said upper, woven layer to
said lower resilient layer.
```

---

[3] This recitation of the prosecution history is drawn from Appellee's Opening Claim Construction Brief, at Appx676-82.

Appx889. Notably, Appellants employed the open transitional phrase "comprising" and did not otherwise specify the structure of the lower major surface aside from denoting that it was "resilient."[4]

The examiner rejected the proposed claims, including the dependent claims, as obvious over the prior art, including U.S. Patent No. 6,296,919 ("Rockwell"), concluding that *Rockwell* taught a "multilayered composite structure" and a "non-slip, cushioned, anti-fatigue carpeted floor covering article which permits cleaning of a pedestrian's footwear" and imparted "non-slip benefits." Appx853.

Appellants amended claim 1 to restrict the number of layers by adopting the term "consisting of," which is a limiting transitional phrase:

---

[4] Appellants state that, "In response to an office action rejecting the two-layered structure of the '917 patent over prior art teaching a three-layered structure, Appellants submitted the final, allowed claims by amending 'comprising' to 'consisting of' in the preambles of claims 1 and 6 the [sic] while simultaneously adding structural elements to both claims, unrelated to the rejction . . . . ." Opening Br. at 1. This is incorrect. The original draft claims in the application that matured into the '917 Patent used the transitional phrase "consisting of" and included structural components. Appx1079. The switch from "comprising" to "consisting of" occurred at the very start of prosecution of the parent application, as explained herein, and as described later in Appellants' Opening Brief at 9. This is one of many inconsistent and/or incorrect statements. For example, Appellants state that the district court construed "consisting of" to apply to the entirety of the claims, thereby limiting the configurations of the bumps, when it did not do so. *Id.* at 16, 24-25.

Claim 1. (currently amended)  A non-skid protective cloth
or pad, ~~comprising~~ consisting of:

   a)    a single, absorbent, plain woven upper layer free
from any protecting cut pile and having an upper and a lower
major surface;

   b)    a single lower, resilient layer having an upper and
a lower major surface, said upper major surface of said single
lower resilient layer being disposed adjacent said lower layer
of said single, absorbent, woven upper layer;  and

   c)    means for fastening said single, absorbent, upper,
woven layer to said single lower resilient layer.

Appx839-40. With the change from "comprising" to "consisting of" as well as Appellants' addition of "single," they limited their coverage to a cloth or pad with two layers only. *See also id.* at 846 ("Applicants have amended claim 1 to change from an open claiming form (i.e., comprising) to a closed claiming form (i.e., consisting of)."). Accordingly, in the next office action, which was a final rejection, the examiner confirmed that, "Applicant has amended the preamble language of the claim by closing up the recitation and making it a two layered structure." *Id.* at 822.

The examiner persisted, however, in rejecting even the "closed" patent claims, issuing rejections on grounds of 35 U.S.C. § 112 and § 103(a) in view of multiple prior art references. Appx823-25. In response, Appellants amended the specification

to clarify certain terminology and filed a request for continued examination. *Id.* at 798, 804-06. The examiner, however, continued to reject their proposed patent claims in view of the prior art. *Id.* at 782-86. The examiner focused heavily on *Zegler*, which he described as teaching a layered floor covering with "thermoplastic projections, exemplified by dimples or nodules" that would "impart skid resistance." *Id.* at 783.

The examiner's excerpt from *Zegler*, showing roughly circular bumps in various shapes and sizes, is below (Appx784):



The examiner also concluded that, although *Zegler* did not teach an absorbent "face" layer as in the proposed claims, this attribute was obvious in view of other prior art. Appx785-86. The application was ultimately abandoned. *Id.* at 702.

*The Patent in Suit Application:* Appellants filed Continuation-in-Part Application No. 14/044,130 on October 2, 2013. Appx1097. The original claim 1 that was filed is below:

What is claimed is:

1. A non-skid protective cloth or pad, consisting of:

    a)    a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

    b)    a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer; and

    c)    means for fastening said single, absorbent, upper, woven layer to said single lower resilient layer;

    whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measures in accordance with TAPPI T548 specification is greater than approximately 0.75.

Appx1079. Notably, Appellants retained their restrictive claim language, including the transitional phrase "consisting of" and the word "single," acquiescing in the

examiner's rejection based on the prior art disclosing a multilayered composite structure. In addition, Appellants added a testing requirement to claim 1 that referenced the Technical Association of the Pulp and Paper Industry ("TAPPI") T548 specification.

The examiner issued a first rejection that continued to focus on obviousness in view of the prior art, including, once again, *Zegler*. Appx1029-32. In response to the rejections, Appellants amended claim 1, *inter alia*, to limit the fastening means to stitching and further to limit the lower surface of the resilient layer to "irregular" surfaces. *Id.* at 998-1001. This, yet again, was insufficient to gain allowance.

After an interview, the examiners suggested additional "narrowing of the independent claims in order to advance prosecution." Appx976. A final rejection followed, in which the examiner continued to maintain rejections pursuant to Section 103, in light of *Zegler*, as well as multiple other prior art references. *Id.* at 960-66. He noted that, "Zegler teaches that the thermoplastic contact layer 40 includes on its lower surface a plurality of shallow thermoplastic projections, exemplified by dimples or nodules in FIG. 4-8, which extend away from the face layer 30." *Id.* at 962. Further, those of ordinary skill in the art "will appreciate that a number of suitable shapes for nodules are suitable, including semi-spherical, prismatic, pyramidal, and the like" for the nodules 71 of *Zegler*, which teaches a "random" arrangement of irregularly-sized semi-ovoid thermoplastic nodules 71. *Id.* at 963.

Indeed, *Zegler* shows bumps of varying sizes, including circumferentially larger bumps that are taller than those that are circumferentially smaller.



To obtain allowance, Appellants thus amended their claims as follows to require the opposite:

> "b)    a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower
>
> major surface comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes;"

16

Appx947. Distinguishing over *Zegler*, with its "dimples or nodules in FIG. 4-8, which extend away from the face layer 30" (Appx962), Appellants amended their claims to specify that the circumferentially smaller bumps would be taller than the circumferentially larger bumps. In so doing, they relied on their specification stating that, "[i]n still other embodiments, smaller bumps 106b may have a height larger than larger bumps 106a," as drawn below:



Appx946. They also added the word "circumference" to their specification to clarify what "larger" modified, i.e., "larger" refers to the circumference of the bumps. *Id.*

Urging allowance of their independent claims, Appellants stated: "Applicants [Appellants] find no recitation of a lower surface configuration as now recited." Appx954. In allowing these claims, the examiner noted that there was no teaching in the prior art of the new proposed language: "the 'downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being, greater than said height of bumps having said larger of said at least two circumferential sizes', in combination with the remaining limitations of the claims." *Id.* at 917-18. In sum, the limitation that the

circumferentially smaller bumps must be taller than those that are circumferentially larger was required for allowance. As a result of this narrowing, Appellants disclaimed embodiments as shown in Figures 1, 2, and 3, all of which depict bumps of varying sizes—and shapes—as taught by *Zegler* and rejected by the examiner repeatedly as unpatentable in view of *Zegler* and otherwise.



Figure 1                    Figure 2



Figure 3

The '917 Patent issued on June 2, 2015. Appx48.

*The Litigation:* This case involves Appellants' unwillingness to recognize that the non-skid protective cloth they think they invented does not enjoy broad patent protection, leaving Appellee free to sell the Accused Products unencumbered by the '917 Patent. They are unwilling to accept that Appellee owes them no recompense. As a result, Appellants sued Appellee and select of its employees, alleging conspiracy, theft of trade secrets, fraud, and deceptive trade practices, to name a few claims. *See generally* Appx532-52. On a motion to dismiss,[5] each of the Appellants' nine claims against Appellee was dismissed save one: patent infringement. *See generally id.* at 605.

Relying on the Appellants' use of the term "consisting of" in their patent claims, Appellee sought to dismiss any patent infringement claim as related to the Stay Put Plus Canvas product outright, too. Appx602-03. Appellants now *admit* that their claims are closed to a third layer, thus confirming the correctness of Appellee's position at the very outset of this litigation – several years too late. Opening Br. at 16, 28 ("The claim is still limited to the two required layers."). In brief, while Appellee has made and sold *both* a two-layer and a three-layer drop cloth, the bulk

---

[5] Appellee filed two motions to dismiss. After Appellee filed a first motion to dismiss, Appellants amended their complaint, thereby rendering its motion moot. Appx478-79. These amendments did not correct the flaws with the initial complaint, however, leading to a second motion to dismiss. *Id.* at 479 (D.I. 19-20).

of Appellee's sales of Accused Products at issue concern the three-layer drop cloth,[6] the Stay Put Canvas Plus drop cloth. Appx584-85. Appellants, however, struck a bargain with the USPTO that limited them to claims covering a *two-layer* drop cloth. Appx822. Relying on *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021), Appellee argued that Appellants had pleaded themselves out of court in their Complaint by asserting independent claims 1 and 6, which are closed to a third layer, while alleging meanwhile that Appellee's Stay Put Plus Canvas product contained a third "liquid barrier component" layer. *Id.* at 582. The district court, however, concluded that it could not eliminate the possibility of infringement of the patent claims by the Stay Put Canvas Plus product on a motion to dismiss and that claim construction would be necessary, as well as the opportunity for discovery. *Id.* at 602-03.

During claim construction, this issue of "consisting of" versus "comprising," and a two layer versus three-layer drop cloth, was fully briefed along with at least three other case-dispositive claim construction issues related to the only independent claims, claims 1 and 6. *First*, in a claim limitation "said downward projecting bumps

---

[6] While the issue of "consisting of" versus comprising was not entirely case dispositive, Appellants did not dispute Appellee's position that if the issue of "consisting of" was resolved in favor of Appellee, the number of sales—and thus the value of this litigation—would likely be inconsequential. Appx584-85, Appx1314-16, Appx1321-22. In recognition of the parties' prior working relationship and pursuant to a license agreement, Appellee paid royalties to Appellants for sales of the Stay Put Canvas products. *Id.* at 1314.

comprising bumps having at least two different circumferential sizes," does the circumference of each bump need to be measurable, whether visually or otherwise? *Second*, in a claim limitation "said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes," must each of the circumferentially smaller bumps have a greater height than each of the circumferentially larger bumps? *Third*, Appellee argued that the TAPPI limitations were indefinite in view of contradictions between the patent specification and the TAPPI T548 test, as well as the lack of instruction to a person of ordinary skill in the art ("POSITA") regarding how to carry out the testing the claim language requires in accordance with TAPPI T548, which is a test used primarily in the paper industry. Appx692-97.

Ruling largely in favor of Appellee, the district court concluded that the term "consisting of" was closed to a third layer as a matter of patent law, that the bumps had to be measurable, and that the differential height of the bumps was constrained. Appx9, Appx14, Appx16, The district court also concluded that claim 1 was indefinite in view of a TAPPI T548 limitation specifying the measurement of a "sliding coefficient of friction" "measure[d] in accordance with TAPPI T548 specification" is "greater than approximately 0.75" when the specification

referenced the measurement of a "static coefficient of friction" instead, rendering the claim scope unknowable to a POSITA. *Id.* at 24-25.

On appeal, Appellants raise *new* claim construction issues, while now readily conceding noninfringement in light of the district court's claim construction ruling. Opening Br. at 18. They concede that the Stay Put Canvas Plus cannot infringe (or be an Accused Product) by agreeing that their claims are closed to a third layer. *Id.* at 16, 28. But they did not concede they had lost on infringement in the district court, whether in a limited scope or otherwise. Instead, they insisted on both fact and expert discovery and, after Appellee filed its summary judgment motion, they sought and were granted limited additional discovery pursuant to Fed. R. Civ. P. 56(d). Appx489 (Minute Entry dated Dec. 10, 2024), *id.* at 1919. They argued expressly that the existence of material facts in dispute made summary judgment improper. *Id.* at 1649-55, 1656 ("Plaintiffs respectfully submit that there are material facts in dispute which preclude a grant of summary judgment."). This persistence, in the absence of evidence of infringement, unnecessarily increased the cost of this litigation. The tactic of raising yet additional claim construction arguments for the first time on appeal—while ostensibly conceding an issue that renders this litigation nearly entirely moot as a practical matter—further increases costs. Appellee has filed a motion for fees in the district court seeking to recover fees incurred post claim

construction pursuant to 35 U.S.C. § 285 as against Appellants and 28 U.S.C. § 1927 as against counsel. Appellee expects to file a motion for fees in this Court, too.

There are also additional reasons for affirming the district court's summary judgment ruling. *First*, Appellants produced no evidence supporting their infringement claims, ever. The only evidence of record established the absence of a genuine issue of material fact, based on the undisputed structure of the Accused Products, which do not meet all of the claim limitations. *Second*, Appellants conceded non-infringement in failing to respond to Requests for Admission served by Appellee. While the district court ultimately allowed Appellants to serve their one-word denials, though untimely, it would have been within the district court's discretion *not* to permit service, particularly in light of the excessive delay and the posture of this litigation as a whole. *Third*, it was error for the district court not to construe both TAPPI limitations as indefinite. Stated simply, a POSITA would be hard pressed to determine how to measure the friction of a protective cloth pursuant to the TAPPI T548 specification intended for the paper industry, whether to determine a "Sliding Coefficient of Friction" value or an "average slide angle" of "no less than approximately 40°."

One way or the other it is long time for this litigation to conclude.

## SUMMARY OF THE ARGUMENT

Appellants seek relief from the determinations of the district court by putting forth a contorted, belated reading of the Asserted Claims 1 and 6 to be completely open by virtue of an odd interplay between "consisting of" and "comprising." While Appellee is hard pressed to articulate what, precisely, Appellants are arguing, one thing is certain. The arguments they are making now were not presented to the district court and, as a result, are waived. In addition, they appear to concede that their patent claims do not cover a three-layer protective cloth, thereby admitting that the Stay Put Canvas Plus Product does not infringe Claim 1 or 6, regardless of any claim construction arguments. Opening Br. at 16, 28.

In any event, the district court did not err in its claim construction, or in its grant of summary judgment. Rather, the clear surrender of subject matter during prosecution rendered this lawsuit untenable in more ways than one. Appellants sought to capture the Appellee's three-layer Stay Put Canvas Plus products, despite having overcome a prior art rejection to a multilayer cloth by agreeing to accept a closed claim to a two-layer cloth. Despite having agreed to limit their claim scope to a configuration of bumps in which the circumferentially smaller bumps are taller than the circumferentially larger ones, they now argue their claims are unrestricted by virtue of a newly articulated, indecipherable claim construction argument resting on a supposed mistake the district court never made. Similarly, they seek to evade

the district court's determination that the bumps must be measurable, circumferentially, based on the same indecipherable claim construction argument.

There are many more reasons why these proceedings should end here and now. Throughout this litigation, Appellants failed to put forward evidence of infringement – ever. Infringement by the Accused Products was not supported by their infringement contentions, not by their so-called expert—who was not a technical expert, but rather a patent attorney (*see, e.g.*, Appx1888)—nor on any other basis. Appellants also failed to respond to Requests for Admission that led them to admit that the claim limitations were not met by the Accused Products. While the district court allowed Appellants to withdraw their Admissions, it was not required to do so under the law. Lastly, the district court determined that the TAPPI limitation was indefinite in connection with claim 6. Appellee submits that the TAPPI limitation in connection with claim 1 is also indefinite, and that the district court erred in determining otherwise.

## STANDARD OF REVIEW

Appellants state that because they conceded non-infringement on the basis of the district court's claim constructions, this Court need only review those constructions. Opening Br. at 18. This is factually incorrect. Appellants did not concede infringement. Appx1656. As a result, Appellee moved for, and was granted,

summary judgment because Appellants failed to "'come forward with specific facts showing that there is a genuine issue for trial.'" Appx44.

This Court reviews a grant of summary judgment under the standard of review of the regional circuit. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). The Fourth Circuit reviews the grant of summary judgment *de novo*, "applying the same legal standards as the district court and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 341 (4th Cir. 2017). "An appellate court can affirm a decision of the trial court upon any ground supported by the record." *See Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1350 (Fed. Cir. 2013).

On appeal, this Court reviews a district court's determination of indefiniteness de novo. *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022) (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1317 (Fed. Cir. 2015)).

## ARGUMENT

### I.  Appellants Have Waived Each of Their New Claim Construction Arguments.

Appellants' Statement of the Issues is difficult to decipher, but each appears to relate to a complicated theory of interplay between the use of "consisting of" and "comprising" within independent Asserted Claims 1 and 6, and the proposition that the claims are closed as to certain elements and open as to others. Because

Appellants did not make this argument to the district court, it is waived.[7] Claim construction arguments not timely made in the district court are not fair game to an appellant. *See, e.g., Conoco, Inc. v. Energy & Env'l Int'l, L.C.*, 460 F.3d 1349, 1358-59 (Fed. Cir. 2006) ("[A] party may not introduce new claim construction arguments on appeal or alter the scope of the claim construction positions it took below. Moreover, litigants waive their right to present new claim construction disputes if they are raised for the first time after trial.").

Each of the two independent claims uses the transitional phrase "*consisting of*" in the preamble, followed by a recitation of two layers and stitching, while referring to a "lower resilient layer" with a "lower major surface" that "*compris[es]*" "a network of downward projecting bumps," "said downward projecting bumps *comprising* bumps having at least two different circumferential sizes . . . .". Appx58-59. Each further specifies that each bump has a height, and that "said height of bumps having the smaller of said at least two different circumferential sizes [is] greater than said height of bumps having said larger of said at least two circumferential sizes." *Id.*

---

[7] Appellants did attempt to argue something similar in their supplemental opposition to summary judgment with regard to the differential sizes of the bumps, but not with regard to measurability. The district court rejected this attempt as untimely, as well as substantively flawed. Appx42-44.

*The preamble*: Appellants concede now that "consisting of" does, indeed, foreclose the possibility of a third layer. Opening Br. at 16, 28. During claim construction, however, Appellants argued that, as to the "consisting of" language in the preamble, "consisting of" would not be closed to a third layer if the third layer was unrelated to the invention. Appx12, Appx1181-82. This argument was nonsensical given that Appellants expressly sought to obtain coverage for a claim to a three-layer drop cloth and were ultimately unable to obtain such a claim. The district court rejected Appellants' attempt to construe the claim as open as to a third layer, but determined that Appellants could present evidence supporting their argument that a third layer was unrelated to the invention. *Id.* at 12.

Appellants made additional arguments that the examiner's rejections did not mean that they had foreclosed a third layer (*see, e.g.*, Appx 11); much like the arguments they are making here, these were difficult to understand. Appellants did not argue, as they do now, that as applicants they only intended to use "consisting of" in relation to "the number of layers and not to the scope of the substructures." Opening Br. at 1-2. Whatever this argument means—or how it would help their cause to have "consisting of" apply only to the number of layers—it is waived. The district court did not have the opportunity to consider the Appellants' argument regarding the purported unlimited substructure because it was not raised below.

Indeed, the argument seems to be the exact opposite of what they argued before, namely, that a third layer was not excluded, whereas now they concede it is.

*The bumps:* Similarly, with respect to the bumps, at the claim construction stage Appellants made no argument focusing on the significance of the term "comprising," as contrasted with "consisting of," within the combined limitation that "said downward projecting bumps comprising bumps having at least two different circumferential sizes, said height of bumps having the smaller of said at least two different circumferential sizes being greater than the height of said bumps having said larger of said at least two circumferential sizes." With respect to the requirement that the bumps be "measurable," they argued that it was improper to add this as a limiting term. Appx1185-86. With regard to the differential sizes of the bumps in relation to height, they ignored the prosecution history and argued that the claim scope was broader in light of the specification, which disclosed varied size differentials. *Id.* at 1187. They did not argue that the use of "comprising" opens up claims 1 and 6 to all configurations of bumps, or contrast it with "consisting of." As a result, this argument is waived on appeal. Indeed, the district court rejected a similar, belated argument made via an untimely supplemental opinion as "beyond the scope of the court's express instructions." *Id.* at 42-44.[8]

---

[8] Although the parties did not address the meaning of the term "comprising" in connection with the limitation concerning the differential sizes and heights of the bumps, the district court noted the fact that "comprising" is an open transitional

The premise of Appellants' entire appeal rests on a reading of the Asserted Claims never properly presented to the district court and, as such, is waived. On this basis alone, this Court may affirm.

## II.     The Challenged Claim Construction Rulings Were Correct.

The district court correctly and carefully construed the claim terms in light of the claims, the specification, and the prosecution history, which was in evidence. Appx4-6 (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (*en banc*)). Here, the prosecution history was especially significant in view of the unmistakable statements disclaiming any right to an invention other than (1) a two-layered protective pad, with (2) a specific configuration of downward projecting bumps. Appellee met its burden to show clear and unmistakable disclaimer in this regard. *See Azurity Pharms., Inc. v. Alkem Lab'ys Ltd.*, 133 F.4th 1359, 1366 (Fed. Cir. 2025) (noting burden on party seeking to establish disclaimer and policy of "[h]olding patentees to their definitive statements made during prosecution [that] protects the public and promotes the notice function of intrinsic evidence" (quoting *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1383 (Fed. Cir. 2021) (further citations omitted)).

---

phrase in construing the limitation "said downward projecting bumps having at least two different circumferential sizes," without discussing the impact of "comprising" as to the claim construction as a whole. Appx14.

In addition to the application that matured into the '917 Patent, here, the prosecution history of the parent application is also instructive in light of the similarity between the claims of the application and those of the patents in suit. *See, e.g., Masco Corp. v. United States*, 303 F.3d 1316, 1324 (Fed. Cir. 2002); *see also Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004); *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.").

This Court should affirm the district court's claim construction determinations as consistent with the intrinsic record, and in particular in view of the clear disclaimer by Appellants.

### a. The Use of the Term "Consisting of" Closes the Patent Claims to a Third Layer.

It is black letter law that the term "consisting of" in patent law creates a closed universe with respect to additional claim elements. *See, e.g.*, *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358 (Fed. Cir. 2016); Manual of Patent Examining & Procedure at Section 2111.03 (Transitional Phrases) ("The transitional phrase "consisting of" excludes any element, step, or ingredient not specified in the claim.") (citations omitted). Tying themselves in

knots, Appellants appear to now concede that "the claim is . . . limited to the two required layers" while arguing that the bottom layer "has always been described and claimed incorporating the bumps/dimples as an open structure which includes other embodiments." Opening Br. at 28.

If Appellants are not conceding infringement as to the Stay Put Canvas Plus products, as they appear to be, they nevertheless lose for at least three separate reasons:

*First*, the convoluted interplay between consisting of and comprising is not an argument they made at the claim construction phase. Rather their primary argument at that stage was based on case law outlining a narrow exception to the transitional term "consisting of." Appx1195 (citing *Conoco, Inc. v. Energy & Env'l Int'l, L.C.*, 460 F.3d 1349, 1360 (Fed. Cir. 2006); *see also Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331-32 (Fed. Cir. 2004) (relied on by the district court at Appx12). Secondarily—and in direct contradiction to their arguments on appeal—Appellants argued that "the amendment of claims 1 and 6 were not made to limit the invention solely to two layers." *Id.* at 1196. Agreeing with Appellee that "consisting of" closed the claims to a third layer, the district court nonetheless concluded it was a question of fact whether Appellants could demonstrate that the Stay Put Canvas Plus product's third layer was unrelated to the invention. *Id.* at 12. Appellants put forward no such evidence to avoid summary judgment. Their argument on appeal, pivoting,

that somehow "said layer *comprising* a network of downward projecting bumps interconnected with one another by a resilient grid" and "said downward projecting bumps *comprising* bumps having at least two circumferential sizes" opens up the "substructures" to any and all bump configurations (Opening Br. at 1-2) (emphasis added), is waived. The notion that this was an overapplication of the district court's determination of "consisting of" finds support nowhere in the record. Furthermore, Appellants did not ask the district court to construe "said layer comprising a network of downward projecting bumps interconnected with one another by a resilient grid" at all.

*Second*, the district court's determination that the Appellants closed up their claim language during prosecution history was amply supported. During prosecution of the parent application, in response to a rejection based on a prior art multilayer structure (*Rockwell*), Appellants amended their draft claims from a "non-skid protective cloth or pad, *comprising*" to "a non-skid protective cloth or pad, *consisting of.*" Appx839 (emphasis added). In response, the examiner noted: "Applicant has amended the preamble language of the claim by closing up the recitation and making it a two layered structure." *Id.* at 822. As a result, the district court concluded that, absent evidence that the third layer of the Stay Put Canvas Plus drop cloth was unrelated to Appellants' invention, Asserted Claims 1 and 6 would not cover it. No evidence was presented to avoid summary judgment on this point.

*Third*, the district court also concluded that there was nothing in the specification to contradict the plain and ordinary meaning of "consisting of" to be closed, in the context of the patent claims. Therefore, even if the claim had not been amended during prosecution, it would still be limited to the two layers described in claims 1 and 6.

The district court did not err in its construction of the claim term "consisting of" to indicate that the structure of Asserted Claims 1 and 6 was closed. If anything, the district court provided Appellants with too much leeway. As a matter of law, the use of "consisting of" affirmatively closes off the Asserted Claims to what they expressly disclaimed during prosecution, as they at long last concede.

> **b.** **The Limitation "said height of bumps having the smaller of said at least two different circumferential sizes being greater than the height of said bumps having said larger of said at least two circumferential sizes" Was Added by Appellants to Overcome the Prior Art and Restricted the Covered Embodiments.**

For several years, Appellants tried—without success—to overcome the prior art. Foremost among those references was *Zegler*, which the examiner concluded disclosed a "thermoplastic contact layer 40 [that] includes on its lower surface a plurality of shallow thermoplastic projections, exemplified by dimples or nodules in FIG. 4 - 8, which extend away from the face layer 30." Appx962. This was exemplified by the examiner elsewhere in the following drawing from *Zegler* (Appx at 784).



In brief, Appellants amended their claims to the current configuration to overcome *Zegler*, which the examiner cited as prior art *throughout* prosecution, thereby disclaiming the embodiments encompassed in Figures 1, 2, and 3. As the district court properly noted, on December 26, 2014, Appellants added the language "said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes" in place of prior versions of claims 1 and 6, where there was no such limitation, and where a dependent claim recited that "the downward projecting bumps comprise bumps of at least two different heights." Appx20-21 (relying on Appx108: "Applicants find no recitation or suggestion of a lower surface configuration as now recited. Consequently, Applicants believe that their

35

amendment of claims 1 and [6] overcome their rejection under 35 U.S.C. § 103(a) as being unpatentable over ZEGLER in view of STICHTER . . . .")).

An inventor who limits the claims during prosecution cannot later "recaptur[e] through claim interpretation specific meanings disclaimed during prosecution to overcome prior art." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003); *see also Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). Here, Appellants' disavowal is clear and unmistakable, as the district court correctly concluded.

Appellants argue that they have shown that there was no unmistakable disavowal of the claim scope the district court found. Opening Br. at 27-28. But they do not offer support for this proposition. Without citation, and ignoring the basis for the patent to have granted, they state, boldly, that "*[n]o amendments were made to the claims showing any disavowal*, and no amendments to the specification were made that deleted or changed any of the embodiments describing the invention as shown in Figures 2 and 3 and as claimed that could amount to a disavowal." *Id.* at 28 (emphasis added). Appellants' assertion ignores, entirely, the literal language of the amendment, which specifically excludes and thereby clearly disavows the embodiments depicted in Figures 1, 2, and 3.

Appellants' argument rests on the notion that the rejections were significant for the number of layers, but not for the structure of the individual layers, which they

say remains open to other embodiments. Opening Br. at 16, 28. The argument is difficult to follow, but Appellants are wrong either way. In a first rejection, Appellants closed their claim to two layers. Subsequent rejections were based on *Zegler*, which had to do specifically with the structure and nature of the bumps – *not* the number of layers to which Appellants could claim protection. There was a single embodiment that survived prosecution to mature into the '917 Patent claims, one in which the circumferentially smaller bumps were taller than the circumferentially larger bumps. As the district court noted, in outlining the various embodiments in the '917 Patent specification, and the lack of claim scope covering the embodiments therein: "The answer to this conundrum lies in the prosecution history." Appx20 (quoting *PSN Illinois LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) (noting that cancelled claims may provide evidence that an embodiment is not within the scope of the claims)). Furthermore, the district court correctly concluded that contradictory embodiments in the specification "are vestiges of [appellants'] original application, which do not reflect the narrowing necessary to obtain the patent." *Id.* at 21.

If "comprising" had the significance Appellants now put forward—and Appellants never argued before that it did—it would render the carefully bargained for claim language meaningless. The district court's analysis was thorough and well-reasoned as to this claim limitation. Appx16-20.

c. **The District Court Correctly Determined That "said downward projecting bumps comprising bumps having at least two different circumferential sizes" Must Be Measurable.**

Appellants' new argument on appeal with regard to this limitation, much as with the last limitation, appears to be that the district court improperly "clos[ed] the term [said downward projecting bumps comprising bumps having at least two different circumferential sizes] to require that all of the bumps must be measurable," by overapplying its interpretation of "consisting of" in the preamble. Opening Br. at 2. Appellants further make much ado about the use of the word "comprising" in the district court's claim construction, as if the court had addressed the arguments they make here and rejected them. *Id.* at 21; *compare with* Appx14-15.

Their argument is waived for purposes of appeal. First, Appellants never made any argument seeking to reconcile "consisting of" with "comprising," let alone an argument that comprising was relevant to whether the bumps were required to be measurable or not. Second, the Appellants' reliance on the district court with regard to its analysis of "comprising" is overblown. The district court noted in its claim construction that it was maintaining the word "comprising" in the construction, along with adopting consistent plural forms for the bumps, to align with the "grammar and language of the patent." Appx14-15. While acknowledging the transitional phrase "comprising" is open, the district court's analysis relied on the noncontroversial proposition that a POSITA would need to be able to measure the

circumference of the bumps to determine whether the claim term was met or not, whether visually (as Appellants suggested) or otherwise. This conclusion was well reasoned: "Where it is impossible to tell whether an object is larger or smaller than another object without measuring, the claims and specification support a requirement that the circumference of each bump be measurable . . . ." *Id.* at 14.

The Appellants' suggestion that the claim should be open to bumps that are both measurable—or not—would render the claim language meaningless. Appellants would have this limitation mean that there are bumps with discernible circumferences, or no discernible circumferences. Appellants cite to no proposition of law to suggest that use of the term "comprising" may act as a vehicle to vitiate the otherwise plain language of a claim. For its part, Appellee is likewise aware of none.

## III. The Claim Term "Whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40 degrees" Is Indefinite.

Independent Asserted Claims 1 and 6 each contain a TAPPI limitation, as follows:

Claim 1: "*whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75*"; and

Claim 6: "*whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°.*

The district court properly concluded that the TAPPI limitation contained in claim 1 was indefinite. Appx24-25. In finding that this term was indefinite the district court relied primarily on the confusion between the patent specification and the TAPPI T548 test protocol. TAPPI T548 describes the measurement of both a "static coefficient of friction" as well as a "sliding coefficient of friction." *Id.*; Appx1114. The claim refers to a "sliding coefficient of friction" (Appx58), while the specification repeatedly refers to a "static coefficient of friction" (Appx53, 54, 56 (col. 4, ll. 12-23), 58 (col. 7, ll. 40 to col. 8, l. 17)), thus leading to confusion – confusion that was never addressed by Appellants. *Id.* at 1187, 1189.

Appellee submits, however, that the TAPPI limitation of Claim 6 is also indefinite. When read in light of the specification, in particular col. 7 to Col. 8 (Appx58), it fails to inform a POSITA of the scope of the invention, with any reasonable certainty, thereby failing the test for definiteness. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-11 (2014). The TAPPI T548 test specification applies to "uncoated writing and printing paper by use of the inclined plane method." Appx693 (quoting Appx1113). As a result, a POSITA must know how to adapt the TAPPI test methods to apply it to a drop cloth. A POSITA cannot know how to carry out the procedure where it begins with the instruction that "[o]ne specimen of paper sample is clamped to an incline plane, the other to a rubber-faced sled" and instructs preparation of paper samples. *Id.* at 1114. While a POSITA could

look to the specification for clarity, the specification does not offer clarity. In addition to inconsistently using both a static coefficient of friction and a sliding coefficient of friction – it is not clear which applies to claim 6 –the TAPPI specification is inconsistent with the specification of the '917 Patent. For example, TAPPI T548 indicates the use of a sled for testing, while the specification of the '917 Patent does not. *Compare* Appx 1114 with Appx 52 (Figure 4 (omitting a sled). As a result, the TAPPI limitation of claim 6 is also indefinite by failing to adequately inform a POSITA with regard to the scope of the claim.

## IV. The Court's Summary Judgment Determination Is Sustainable for Two Additional, Independent Reasons.

### a. Appellants Failed to Present Evidence of Infringement.

There was ample evidence before the district court to support its award of summary judgment in favor of Appellee, against the backdrop of Appellants' failure to present any affirmative evidence that each limitation of each claim was met by the Accused Products, as is required. *See* Appx36 (citing *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1316 (Fed. Cir. 1999)); Appx38 (noting the failure to carry the burden of coming forward with facts showing an issue for trial). Indeed, the only evidence presented at the district court level confirmed that summary judgment was proper:

(1)     Appellants' Rule 26(a)(2) Disclosure from Mr. Daniel Tanner, Esq.[9]
        (Appx1493-1512), and testimony (Appx1779-1866);

(2)     Appellee's Rule 26(a)(2) Disclosure from Dr. Christine Cole
        (Appx1660-1673), and testimony (Appx1691-1770);

(3)     Appellants' Infringement Contentions (Appx1515-1528); and

(4)     Appellee's First Set of Requests for Admission (Appx1488-1490).

In view of the district court's dispositive claim construction determinations,
Appellee focused first and foremost on the absence of evidence demonstrating that
the Accused Products included bumps that were measurable or that the
circumferentially smaller bumps were taller than the circumferentially smaller
bumps. Appellants presented no evidence of either; indeed, as the district court
discussed, both experts testified based on their review of the Accused Products only
that there were *instances* in which the bumps of the Accused Products were
measurable. Appx39-40. As to the differential height limitation, no evidence was
presented that this limitation was met. The Appellants' only objection on summary
judgment amounted to an improper attempt to shift the burden to Appellee to prove

---

[9] Appellants submitted Mr. Tanner's opinion of counsel along with their Complaint.
Appx514. After Appellee sought to compel discovery in connection with his opinion
for purposes of claim construction, Appellants positioned Mr. Tanner as their expert,
seeking to shield these communications. *Id.* at 1569. In particular, Appellants sought
communications related to Mr. Tanner's failure to analyze the limited scope of the
claim language in view of the transitional phrase "consisting of." *Id.* at 1552-55.

that "'the bumps fall outside of those limitations.'" Appx41 (quoting Appx1652 & n.1; *Zelinski*, 185 F.3d at 1316). The Appellants' expert never took a position beyond maintaining that he did not read the claim to require all of the bumps to comply with the "'height' relationship." *Id.* at 1504. This burden shifting was properly rejected by the district court.

Separate and apart from Appellants' inability to present evidence avoiding summary judgment in view of the case-dispositive claim construction rulings, Appellants failed to present evidence that – *even if* these limitations were met – each of the other claim limitations would likewise be met. This failure was abundantly clear in connection with the TAPPI limitations. Appellants' expert, for example, offered no support for the proposition that the TAPPI limitations were met, either in his report or in his testimony. Appx1581, Appx1583 ("We understand that [the TAPPI] feature/limitation is standard and easily provable, likely through an expert declaration, that the sample non-skid drop cloth includes this feature of the claim."); *Id.* at 1855-56 ("Q. So where is the expert declaration that is going to prove [the TAPPI limitation] for the [Appellants]? A. I didn't provide one. I can't tell you what else is out there, but I certainly didn't provide it."). Similarly, Appellants' infringement contentions were deficient, stating only that, as to both TAPPI limitations, in Asserted Claims 1 and 6, "This functional limitation is a result of the structural configuration of the complete structure as defined by the claim which, if

not literally infringed, would be infringed under the doctrine of equivalents." *Id.* at 1522, 1524.[10] The absence of evidence related to the TAPPI limitations was also raised to the district court as a separate basis for granting summary judgment. *Id.* at 1916-17.

As a result of the foregoing, even if Appellants' arguments on appeal were not waived, and even if this Court were to disagree with the district court's claim construction rulings, the district court's judgment must be affirmed in light of Appellants' failure to put forward a disputed question of fact.

### b. Appellants Admitted Noninfringement by Failing to Respond to Requests for Admission, which Were Then Deemed Admitted.

Appellee also moved for summary judgment on the basis of Appellants' failure to respond to requests for admission directing to the issue of infringement. Having failed to respond, pursuant to Fed. R. Civ. P. 36(a)(3), Appellants were deemed to have admitted noninfringement.

Here, the district court acted within its discretion to permit the Appellants to withdraw their admissions. The district court, however, would have been well within its discretion to refuse to permit them to withdraw these admissions, too. Appx1627-28 (citing *United States ex rel. Graybar Elec. Co. v. TEAM Constr., LLC*, 275 F. Supp. 3d 737, 743 (E.D.N.C. 2017); *Est. of Jones by Jones v. City of Martinsburg*,

---

[10] Appellants did not assert infringement by the doctrine of equivalents. Appx550.

No. 3:13-CV-68, 2016 WL 10585014, at *1 (N.D. W. Va. Dec. 2, 2016)). In particular, Appellants failed to respond to any discovery, including the Requests for Admission, for a period of 4 months. Appx1626.

Given the undisputed evidence of record, and Appellants' failure to raise a material issue of fact in response to summary judgment, along with affirmatively admitting noninfringement, the district court's judgment might be affirmed on this basis, too.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For all of the foregoing reasons, Defendant-Appellee requests that this Court affirm the district court's judgment below.

Respectfully submitted,


*/s/ Deborah Pollack-Milgate*
Deborah Pollack-Milgate
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313 | Fax (317) 231-7433
dpollackmilgate@btlaw.com

Allen R. Baum
BARNES & THORNBURG LLP
4208 Six Forks Road, Suite 1010
Raleigh, NC 27609
Tel. (919) 536-6200 | Fax (919) 536-6201
allen.baum@btlaw.com

*Counsel for Defendant-Appellee*
*Trimaco, Inc.*

Dated: September 11, 2025

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2025-1808

**Short Case Caption:** Terracino v. Trimaco, Inc.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes _8,872_ words.

- ☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- ☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/11/2025

Signature: /s/ Deborah Pollack-Milgate

Name: Deborah Pollack-Milgate

Save for Filing